IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
JOSHUAH SPRAGGINS,          )
                            )
      Plaintiff,            )
                            )  CIVIL ACTION NO.
      v.                    )    3:04cv1071-T
                            )      (WO)
KNAUF FIBER GLASS GmbH,     )
INC., a German             )
Corporation,                )
                            )
      Defendant.            )
```

ORDER

Plaintiff Joshuah Spraggins brings this lawsuit
against defendant Knauf Fiber Glass GmbH, Inc. under the
Family Medical Leave Act of 1993 (FMLA), 29 U.S.C.A.
§§ 2601-2654.[1]  Spraggins claims that Knauf interfered
with his right under the FMLA to return to work following

_____

1.  Pursuant to separate orders dated November 1,
2005, Spraggins's state-law claims and Spraggins's FMLA
retaliation claim have been dismissed.

FMLA-qualifying leave.   Jurisdiction over Spraggins's claim is proper under 29 U.S.C.A. § 2617(a)(2).

This case is currently before the court on Knauf's motion for summary judgment.   The motion will be denied.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).   The non-

moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. FACTUAL BACKGROUND

The following facts are construed in Spraggins's favor as the non-moving party:  In August 2004, Spraggins's wife was one month pregnant with their third child.  In the early morning hours of August 5, she began

3

spotting and experiencing cramps in her abdomen.   She arranged an appointment with her obstetrician but was instructed not to drive herself to the appointment.[2]

Spraggins stayed home from work on August 5 and drove his wife to an emergency room near their home in Valley, Alabama, then to the emergency room in Columbus, Georgia, and then to the appointment with her obstetrician.[3]   The obstetrician stated that she might be in the early stages of miscarriage and ordered her to bed rest for at least five days.   Before leaving the office, Spraggins obtained a doctor's note excusing his absence from work that day because he had to drive his wife to the doctor.   That evening, Spraggins and his wife decided that he would

_____

2.   Evidentiary submission in support of plaintiff's motion for summary judgment (Doc. No. 26), Ex. CC, Deposition of Jessica Spraggins ("Jessica deposition"), pp. 28-32.

3.   Id., Ex. DD, Deposition of Joshuah Spraggins ("Spraggins deposition"), pp. 79-85.

4

stay home on August 6 to take care of her, but they
remained uncertain of a course of action on August 7.[4]

On August 6, Spraggins stayed home from work to take
care of his wife and children.  Because her bleeding and
cramping worsened slightly, Spraggins's wife called a
colleague of her obstetrician, who reiterated that she
might be miscarrying and should stay in bed.[5]  On August
7, Spraggins again stayed home to care for his wife and
children, and his wife stayed in bed most the day.  She
was still bleeding slightly and experiencing some pain.[6]

On August 10, Spraggins took his wife to see her
urologist, who informed her that the pain she was
experiencing was due to kidney stones.  Before leaving
the urologist, Spraggins obtained a doctor's note that

---

4.  Jessica deposition, pp. 35, 42-43, 53.

5.  Id., pp. 54-56, 58.  Spraggins may also have
driven his wife to see her urologist about abdominal pain
sometime that day.  Spraggins deposition, p. 107.

6.  Spraggins deposition, pp. 121-24.

excused his absences from August 5 through August 12 because his wife needed his assistance.[7]

During this time, Spraggins was employed by Knauf. Under Knauf's absence policy, absences are excusable in the case of illness or emergency only if employees notify their supervisor "at least one hour prior to the start of their shift unless reasonably prevented from doing so."[8] As of August 2004, Spraggins faced termination under Knauf's customary disciplinary policy for one more unexcused absence.[9]

On August 5, Spraggins called in at least an hour before his shift was scheduled to begin and explained that he would miss work that day because his wife was having complications with her pregnancy and he had to drive her to the doctor.[10]  Later that day, he spoke with

7.   Jessica deposition, pp. 76-79.

8.   Appendix to defendant's motion for summary judgment (Doc. No. 23), Ex. A, Employee Handbook, p. 40.

9.   Spraggins deposition, pp. 67-69.

10.  Id. p. 93.  Whether Spraggins called in an hour before work on August 5 and 6 is hotly disputed.  Because

Gene Evans, Knauf's human resources officer, who informed Spraggins that he would need a doctor's excuse.[11]   On August 6, Spraggins called in at least an hour before his shift was scheduled to begin and explained that his wife had a complication involving her kidneys and he needed to stay home to assist her.[12]   On August 7, Spraggins called in 54 minutes before work began and informed his supervisor that he could not attend work because he needed to stay home with his wife who was not well.[13]

On August 10, Spraggins gave the two doctor's notes to an assistant in Knauf's human resources office.[14]   When

_____

Spraggins is the non-moving party, the facts are viewed in the light most favorable to him.  However, the parties agree that he failed to call in an hour before work on August 7.

11. Evidentiary submission in support of plaintiff's motion for summary judgment (Doc. No. 26), Ex. EE, Deposition of Gene Evans ("Evans deposition"), pp. 44-45.

12. Jessica deposition, pp. 58-59.

13. Spraggins deposition, p. 121.

14. Id. at 142.

7

Spraggins reported to work on August 13, Evans terminated him.[15]


### III. DISCUSSION

The only issue presented by this motion is whether Knauf's termination of Spraggins for violating its customary call-in policy on August 7 interfered with Spraggins's right to return to work after FMLA-qualifying leave. Congress passed the FMLA to balance the legitimate interests of employers with the need of employees to take reasonable leave for serious health reasons, to care for a child, spouse, or parent who has a serious health condition, or for the birth or adoption of a child. 29 U.S.C.A. § 2601(b). The FMLA creates a right of action for employees against their employer if the employer denies or otherwise interferes with their rights under the FMLA. 29 U.S.C.A. § 2615(a)(1).[16] Among

_____

15. Evans deposition, pp. 48-51.

16. To prevail on an FMLA interference claim, employees must show, by a preponderance of the evidence,

8

the substantive rights granted to an eligible employee by
the FMLA are the right to 12 weeks of leave during any
12-month period in order to care for an employee's spouse
if the spouse has a serious health condition, 29 U.S.C.A.
§ 2612(a)(1)(C), and the right upon the employee's return
from leave to be restored to the position of employment
(or its equivalent) held by the employee when the leave
commenced.  29 U.S.C.A. § 2614(a)(1).

In fleshing out what type of notice employees must
give their employer in order to take FMLA-qualifying
leave, the regulations attempt to differentiate between
"foreseeable" and "unforeseeable" leave.  29 C.F.R.
§ 825.302 is entitled, "What notice does an employee have
to give an employer when the need for FMLA leave is
foreseeable?" 29 C.F.R. § 825.303 is entitled, "What are
the requirements for an employee to furnish notice to an

---

that they were entitled to a right under the FMLA and
their employer interfered with or denied that right.
O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349,
1353-54 (11th Cir. 2000).

9

employer where the need for FMLA leave is not foreseeable?"

Under § 825.302, when the need for FMLA leave is "foreseeable based on ... planned medical treatment for a serious health condition ... of a family member," employees "must provide the employer at least 30 days advance notice before FMLA leave is to begin." 29 C.F.R. § 825.302(a).[17]  When the 30-day notice requirement "is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." Id.  "'As soon as practicable' means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case.  ... '[A]s soon as

_____

17. The agency interpretation of the FMLA is persuasive authority because "[t]he well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Bragdon v. Abbott, 524 U.S. 624, 642 (1998) (internal quotations omitted).

practicable' ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." 29 C.F.R. § 825.302(b). Employers "may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d).

Under § 825.303, when the need for FMLA leave is unforeseeable, employees must give notice "as soon as practicable under the facts and circumstances of the particular case," which is understood to mean "within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a).

Knauf contends that, because its one-hour-before-shift-begins notice requirement is a "usual and customary notice and procedural requirement[] for requesting leave," as provided for in § 825.302(d)'s "foreseeability" provisions, the FMLA allows the

11

requirement; thus, Spraggins was required to comply with it, and his termination was justified because he failed to do so.   Spraggins responds that, because Knauf's one-hour-before-shift-begins notice requirement conflicts with the "one or two working days" requirement, as provided for in § 825.303's "unforeseeability" provisions, the Knauf requirement is prohibited by the FMLA and thus cannot be applied to him.   As the parties frame the question, then, the critical inquiry would be whether the leave here was foreseeable or unforeseeable.

Except for the 30-day notice provision, however, §§ 825.302 and 825.303 do not clearly explain when leave is to be viewed as "foreseeable" or "unforeseeable."   For example, if an employee learns of the need for leave only a day before the work day begins, is the need viewed as "foreseeable" or "unforeseeable?"   What about a half day? Or just two hours?   Sections 825.302 and 825.303 do not answer these questions.   In fact, the regulations blur the distinction between the two because both, at bottom,

12

require that an employee give notice as soon as practicable under the individual circumstances of the case. Regrettably, §§ 825.302 and 825.303 actually do more to confuse than to clarify the FMLA's requirements. Cf. Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1205 (11th Cir. 2001) (noting that trial court's "misinterpretation is understandable given the unartful and unfortunate use of language in the FMLA and its accompanying regulations").

When faced with such ambiguities in the FMLA regulations, courts must look to the context of the ambiguous provisions and consider the provisions in light of the FMLA's purpose. Strickland, 239 F.3d at 1205 (11th Cir. 2001). Recognizing that the FMLA was passed by Congress to balance not only the need of employees to take reasonable leave for serious health reasons, but also the legitimate interests of employers, this court rejects Spraggins's interpretation, which would, in effect, prohibit employers from requiring advance notice

before the shift begins in emergency situations, even if the employee could have provided such notice. Common sense dictates that this would not be a reasonable way to run a business: Without some notice of intended leave, employers cannot make reasonable arrangements to fill in for the employee who is absent on FMLA leave. Surely Congress did not intend that employees could take FMLA leave willy-nilly, regardless as to whether they were able to give notice before their workday began, as long as they gave notice within two days of learning of the need for the leave. Such an interpretation of the regulations is therefore not reasonable.

Balancing the legitimate interests of both employees and employers, the court distills the following legal principles from the two regulations to the extent they apply to an employer's one-hour-before-shift notice requirement: If it is not practical for an employee to give 30-days advance notice of the need for leave, the employee must give notice as soon as practicable under

14

the facts and circumstances.  The FMLA, therefore, allows an employer to require notice one hour before the employee's shift begins, as long as it is reasonable to expect the employee, under the individual circumstances, to give such notice.  See Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002) (holding that employee could be fired for failing to follow employer's customary call-in policy while taking FMLA leave because she offered no explanation why she could not have called in to report her absences); see also Bones v. Honeywell Int'l, Inc., 366 F.3d 869 (10th Cir. 2004) (holding that employer's decision to terminate employee for failing to comply with its customary call-in policy did not violate the FMLA when employee offered no reason for her failure to provide notice).  But if the employee cannot meet the one-hour requirement, then, under the FMLA, the employee must give notice as soon as practical, up to one or two days after learning of the need for leave, unless giving

15

notice within the one- or two-day period is impractical as well.

All that remains is to apply these legal principles to the facts of this case.  Although Spraggins's wife testified that on August 5 they did not know if Spraggins would need to remain at home on August 7, the record is completely silent as to when they decided he needed to stay home on August 7.[18]  If they did not know whether Spraggins would have to stay home until that morning, then it might have been impractical for Spraggins to meet Knauf's one-hour notice requirement and, if so, to apply the requirement would be impractical and would violate the FLSA.  On the other hand, if the decision was made the night before, then perhaps he could have met the requirement, and, if so, his failure to comply with the policy was inexcusable and application of policy to him would not violate the FMLA.  Based on the inconclusive

_____

18. For example, Spraggins was unable to recall why he did not call in August 7 until 7:06 a.m.  See Spraggins deposition, p. 120.

16

record, the court cannot make a definitive conclusion on this issue.

Summary judgment on Spraggins's interference claim against Knauf is therefore inappropriate because there is a genuine issue of material fact as to whether it would have been practicable for Spraggins to provide notice one hour before his shift began.[19]


## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that defendant Knauf Fiber Glass GmbH, Inc.'s motion for summary judgment (Doc. No. 21) is denied.

DONE, this the 21st day of November, 2005.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE

_____

19. It has not escaped the court's notice that this dispute is basically over a phone call (or phone calls) that occurred approximately six minutes late. The court cannot help but wonder if this litigation is warranted over what would appear to be, at most, a de minimis infraction of Knauf's attendance policy.

17